# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SOUTHERN COAST K9, LLC and
360 SECURITY PARTNERS,
LLC,

Plaintiffs,

v.                                                    Case No. 6:25-cv-298-JA-LHP

MARGUERITE HEISER and
WILLIAM HEISER,

Defendants.

_____

ORDER

The parties in this case are in the business of training and placing service dogs. Their personal and business relationships were convoluted, so the devolution of their relationships into a convoluted legal dispute is unsurprising. Plaintiffs Southern Coast K9, LLC (Southern Coast) and 360 Security Partners, LLC (360 Security) filed a nine-count Complaint against Defendants Marguerite and William (Bill) Heiser (Marguerite and Bill respectively).[1] (Doc. 1). Plaintiffs' claims arise out of 360 Security's purchase of Southern Coast from Marguerite Heiser. Now before the Court is Defendants' Motion to Dismiss. (Doc. 14).[2] After careful consideration, the Court concludes that the Motion to

---

[1] Plaintiffs filed a response to the Motion to Dismiss. (Doc. 15).
[2] The Court uses first names only to avoid confusion.

Dismiss, (Doc. 14), must be granted in part and denied in part.

## I.    BACKGROUND

From 1998 to 2020, Marguerite was the majority owner of Southern Coast. Bill did not have an ownership interest in the business, but he managed the business and owned the Florida property on which the business was located.  In August 2020, Marguerite contracted to sell Southern Coast to 360 Security, a business located in Texas.[3]  Among other provisions, the Purchase Agreement precluded the Sellers from engaging in a competing business for five years. (Doc. 1-2 § 5.2).

Bill did not sign the Purchase Agreement, but he did sign a "spousal joinder" in which he stated that he "has no ownership interest in . . . Southern Coast either directly or as a part of the marital estate of [Marguerite] and [Bill]" and that he "fully consent[ed] and agree[d] to the terms and provisions of this Agreement insofar as it may affect any interest that [he] might have in the membership interests or capital stock directly or indirectly owned by [Marguerite] in . . . Southern Coast."  (Doc. 1-2 at 31; *see* Doc. 1 ¶¶ 37, 111 n.4).

Following its sale, Southern Coast began leasing property from Bill, who "continued to operate, manage, and control the business operations" of Southern

---

[3] The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000.  (Doc. 1 ¶¶ 21–28).

Coast as its president. (Doc. 1 ¶¶ 33–35, 41–43, 114, 116–18). Plaintiffs trusted Bill "with all aspects of running the businesses." (*Id.* ¶ 43).

In June 2022, Bill requested to change his status from an employee of Southern Coast to that of an independent contractor. (*Id.* ¶ 42). To that end, 360 Security and Bill entered into an Independent Contractor Agreement. The Independent Contractor Agreement required Bill to "facilitate the transfer of all business assets and operations to a successor executive appointed by 360" Security. (Doc. 1 ¶ 44). However, Plaintiffs allege that Bill refused to facilitate the transfer. (Doc. 1 ¶ 44). Eventually, 360 Security terminated Bill's service. (*Id.* ¶¶ 6, 45).

After Bill's termination, Southern Coast discovered that the Heisers "had engaged in a litany of other bad acts that . . . harm[ed] . . . [360 Security], such as converting funds and assets directly from Southern Coast." (*Id.* ¶¶ 7, 16, 18, 53, 73, 130–31, 135). And the Heisers continue to engage in bad acts, such as representing to third parties that Bill is "Southern Coast's representative, agent, and even its owner." (*Id.* ¶¶ 52–53, 134–35). Plaintiffs claim that the "bad acts" constitute breaches of contract, breaches of fiduciary duties, fraud, tortious interference with existing contracts, and conversion.

Plaintiffs filed this lawsuit against the Heisers in February 2025. 360 Security asserts the following claims: breach of contract (relating to the Purchase Agreement) against Marguerite and Bill (Count 1), breach of fiduciary

duty against Marguerite and Bill (Count 3), and fraud against Bill (Count 5). Additionally, 360 Security seeks a declaratory judgment regarding the ownership of American Detection Canine Association (ADCA) (Count 9). And Southern Coast asserts five claims against Bill only: breach of contract (relating to the Independent Contractor Agreement) (Count 2), breach of fiduciary duty (Count 4), fraud (Count 6), tortious interference with existing contracts (Count 7), and conversion (Count 8). Plaintiffs request compensatory damages, a declaratory judgment, and that Defendants be enjoined from (1) directly or indirectly competing with Southern Coast, (2) soliciting Southern Coast's employees, and (3) soliciting Southern Coast's customers. (Doc. 1 ¶ 224).[4]

## II.    LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient

---

[4] Plaintiffs also request that the injunctive relief "requir[e] Defendants to return to Plaintiffs any customer lists, contact information, or the like in their possession, custody, or control." (Doc. 1 ¶ 225).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Under Federal Rule of Civil Procedure 9(b), a claim for fraud must be pled with particularity.  "Rule 9(b) requires a complaint to set forth '(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.'" *Rutstein v. Viva 5 Grp., LLC*, No. 8:24-cv-02417, 2025 WL 500559, at *3 (M.D. Fla. Feb. 14, 2025) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

## III.  DISCUSSION

Defendants argue that the Complaint must be dismissed for various reasons, including that it is a shotgun pleading, fails to state a plausible claim, fails to join an indispensable party, and pleads time-barred claims.

## A.    Applicable law

As an initial matter, Defendants submit that the Court should construe the Purchase Agreement under Delaware law,[5] the Independent Contractor Agreement under Texas law,[6] and Plaintiff's tort claims under Florida law. (Doc. 14 at 5–7).  Plaintiff does not respond to these arguments, and thus they are deemed unopposed.  The Court will apply Delaware law to the Purchase Agreement, Texas law to the Independent Contractor Agreement, and Florida law to the tort claims.

## B.    The Complaint is not a shotgun pleading

Next, Defendants argue that the Complaint is due to be dismissed as a shotgun pleading.  "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citing Fed. Rs. Civ. P. 8(a)(2) and 10(b)).  In *Weiland*, the Eleventh Circuit outlined four rough types of shotgun pleadings: 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each

---

[5] Section 9.9 of the Purchase Agreement is the choice-of-law provision.  It states: "All disputes, claims or controversies arising out of or relating to this Agreement, or the negotiation, validity, or performance of this Agreement, or the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Delaware."  (Doc. 1-2 at 22).

[6] Paragraph 13 of the Independent Contractor Agreement is the choice-of-law provision.  It states that the Independent Contractor Agreement "will be deemed to have been made in, and shall be construed pursuant to the laws of the State of Texas . . . without regard to conflicts of laws provisions thereof."  (Doc. 1-3 at 2).

successive count to carry all that came before and the last count to be a combination of the entire complaint"; 2) a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and 4) a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." 792 F.3d at 1321–23. All four types of shotgun complaints "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Here, Defendants argue that the Complaint is a shotgun pleading of the first, second, and fourth types.

The Complaint is not a shotgun pleading of the first type. It does not re-incorporate by reference all the allegations of the preceding counts. Instead, the allegations incorporated into each count are limited to the factual allegations in the background of the Complaint. The counts do not incorporate the allegations of one another. Nor is the Complaint a shotgun pleading of the second type. There are a few allegations in the Complaint that do not give rise to a specific count, but the Complaint is not "replete with" such allegations. Indeed, Defendants only provide two examples of allegations that they believe are unrelated to this action. (*See* Doc. 14 at 8).

And the Complaint is not a shotgun pleading of the fourth type.

Defendants are not grouped together for all counts. The two counts asserted against both Defendants are permissibly grouped. There are specific allegations regarding each Defendants' conduct, and it is not "virtually impossible to ascertain . . . which [D]efendant committed which alleged act." *Veltmann v. Walpole Pharmacy*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

Thus, the Complaint adequately puts Defendants on notice and is not a shotgun pleading.

### C.    360 Security's breach of contract claim against Marguerite and Bill (Count 1)

Defendants argue that Count 1—360 Security's claim for breach of the Purchase Agreement—fails to state a claim for breach of contract under Delaware law. To state a claim for breach of contract, 360 Security must allege: (1) the existence of an express or implied contract, (2) Defendants breached an obligation imposed by that contract, and (3) resulting damage to 360 Security. *Ridley v. Bayhealth Med. Ctr., Inc.*, No. N17C-04-306, 2018 WL 1567609, at *7 (Del. Super. Ct. Mar. 20, 2018).

### 1. Count 1 fails to state a claim against Bill

As Bill argues, Count 1 fails to state a claim against him. Plaintiffs do not allege that Bill signed the Purchase Agreement as an owner of the businesses. Under Delaware law, a contract must bind a corporate officer individually to hold the officer liable on a corporate contract. (Doc. 14 at 9–10

(citing *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999))). 360 Security's contention that Bill is bound as an affiliate of Marguerite fails because 360 Security does not allege that a provision of the Purchase Agreement binds Marguerite's (or another seller's) affiliates. And 360 Security has not cited case law that supports its contention that Bill is liable as Marguerite's affiliate or as her spouse.

Thus, Count 1 must be dismissed as to Bill.

### 2. Count 1 states a plausible claim against Marguerite

In contrast, Count 1 states a plausible claim for breach of contract against Marguerite. Contrary to Marguerite's argument, the Complaint sets forth allegations that do more than merely restate in a conclusory fashion the Purchase Agreement's terms. (Doc. 14 at 10). For example, the Complaint alleges that Marguerite breached the Purchase Agreement by "actively soliciting Southern Coast's employees and clients for the purposes of a new competitive business." (Doc. 1 ¶¶ 138, 140).

And Marguerite's argument that Count 1 is barred by Delaware's three-year statute of limitations fails. (Doc. 14 at 11 (citing Del. Code tit. 10, § 8106; and then citing *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 768 (Del. 2013))). 360 Security does not dispute that a three-year statute of limitations applies. Marguerite contends that the statute of limitations began to run on August 17, 2020, when Defendants allegedly failed to make the required

disclosures upon executing the Purchase Agreement. (Doc. 14 at 11). However, 360 Security alleges that Marguerite took actions that breached the Purchase Agreement after executing it and within the three-year limitations period. For example, 360 Security alleges that beginning in July 2023, Marguerite falsified Southern Coast's internal procedures and circulated them to clients to steal its active customers. (Doc. 1 ¶¶ 50–51, 75–79, 107–09). Thus, Count 1 as alleged is within Delaware's three-year statute of limitations. *See Certainteed Corp. v. Celotex Corp.*, No. CIV. A. 471, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005) (stating that a breach of contract claim "accrues at the time of the breach").

Hence, Count 1 states a cognizable and timely claim for breach of contract against Marguerite, and the motion to dismiss it will be denied.

### D.    Southern Coast states a claim for breach of the Independent Contract Agreement (Count 2)

Next, Bill argues that Count 2 fails to state a claim for breach of the Independent Contractor Agreement. To state a claim for breach of contract under Texas law, Southern Coast must allege: (1) there is a valid contract, (2) Southern Coast performed or tendered performance, (3) Bill breached the contract, and (4) Southern Coast was damaged as a result of the breach. *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015).

Here, Southern Coast sufficiently alleges that Bill breached the Independent Contractor Agreement. For example, Southern Coast alleges that

10

Bill breached the Independent Contractor Agreement's compliance-with-laws provision by "jeopardizing Southern Coast's businesses through flagrant illegal conduct." (Doc. 1 ¶¶ 94–95, 114–122, 148–49).

And Southern Coast sufficiently alleges that as a result of Bill's breach, it suffered actual damages. (Doc. 1 ¶¶ 121–22, 153). Although the Independent Contractor Agreement has a limitation-of-liability clause that bars recovery of certain types of damages,[7] it is not clear at this stage of the case that Count 2 seeks unrecoverable damages. The Complaint generally requests compensatory damages and Count 2 alleges that Southern Coast suffered actual damages. (*Id.* ¶ 17)). The Complaint does not on its face request unrecoverable damages. (*Id.* at 53–54).

Accordingly, Count 2 sufficiently states a claim for breach of the Independent Contractor Agreement against Bill.

### E.    Breach of fiduciary duty (Counts 3 and 4)[8]

Under the independent tort rule,[9] "parties to a contract can only seek tort

---

[7] Specifically, the clause bars the recovery of damages for "any loss of use, interruption of business, lost profits, or any indirect, special, punitive, incidental, or consequential damages of any kind regardless of the form of action." (Doc. 1-3 ¶ 8 (emphasis removed)).

[8] 360 Security asserts Count 3 against Marguerite and Bill, and Southern Coast asserts Count 4 against Bill.

[9] The independent tort rule has also been referred to as the independent tort doctrine. *See, e.g., Brooks v. Brooks Consultants, Inc.,* No. 6:22-cv-669, 2022 WL 18492552, at *6 (M.D. Fla. Nov. 7, 2022), *report and recommendation adopted,* 2023 WL 3121344 (M.D. Fla. Jan. 12, 2023). The independent tort doctrine "is an off-shoot of the economic loss rule, which barred tort actions 'when the parties were in

damages if the alleged tortious conduct constitutes a tort distinct from the parties' contractual rights and obligations." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, No. 06-80652-CIV, 2007 WL 7124464, at *8 (S.D. Fla. Feb. 12, 2007). Here, Plaintiffs allege that Defendants' conduct "breach[ing] . . . the Independent Contractor agreement [and] the Purchase Agreement" also breaches their "fiduciary duties owed to Plaintiffs." (Doc. 1 ¶¶ 92, 110; *see* Doc. 1 ¶¶ 46–50, 54–56, 93–95, 165); *see Calvoz v. Chamonix, Inc.*, No. 22-22358-CIV, 2023 WL 11661631, at *5 (S.D. Fla. Apr. 20, 2023) (dismissing negligence claims arising from same conduct as breach of contract claims, where tort duty arose from the contract at issue and negligence claims incorporated allegations supporting the existence of a contract).

Thus, Counts 3 and 4 must be dismissed.

### F.    Counts 5 and 6 do not allege independent torts

Bill argues that Plaintiffs' fraud claims, Counts 5 and 6, are due to be dismissed for several reasons, including the independent tort rule. Because the independent tort rule is dispositive, the other grounds are not addressed.

---

contractual privity and one party sought to recover purely economic damages in tort for matters arising from contract.'" *Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (quoting *Certain Underwriters at Lloyd's of London UK Subscribing to Policy No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n., Inc.*, No. 6:16-cv-258, 2017 WL 3034069, at *10 n.19 (M.D. Fla. July 18, 2017)); *see Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (stating that the independent tort rule is a "predecessor[ ] of what later became known as the 'contractual privity economic loss rule'").

Bill is correct that Counts 5 and 6 do not allege torts independent of the alleged breaches of contract. Throughout the Complaint, Plaintiffs allege that Bill's conduct that constitutes fraud also constitutes a breach of contract. For example, the Complaint has allegations regarding the fraudulent visa program following Plaintiffs' allegation that "many, if not all of [Bill's] actions . . . violated . . . duties prescribed by the Independent Contractor Agreement." (Doc. 1 ¶¶ 93–94). And the fraud claim is based on allegations relating to the visa program, like the claim for breach of the Independent Contractor Agreement, which specifically alleges a breach based on Bill's failure to "review personnel" in compliance with applicable laws. (*See id.* ¶¶ 149, 174, 184). Hence, Counts 5 and 6 fail to allege fraud that is distinct from the parties' contractual rights and obligations. *See Calvoz*, 2023 WL 11661631, at *5; *see also Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (recommending dismissal of fraudulent inducement claims to extent that they were based on statements that were inextricably intertwined with the performance of the parties' contract).

Accordingly, Counts 5 and 6 must be dismissed.

### G.  Southern Coast states a claim for tortious interference with existing contracts against Bill (Count 7)

Next, Bill argues that Count 7 fails to state a claim. To state a claim for tortious interference with a contractual relationship, Southern Coast must

allege: "(1) [t]he existence of a contract, (2) [t]he defendant's knowledge of the contract, (3) [t]he defendant's intentional procurement of the contract's breach, (4) [a]bsence of any justification or privilege, [and] (5) [d]amages resulting from the breach." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (fifth alteration in original) (quoting *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

First, Southern Coast has sufficiently alleged that it had a valid contract with Disney and MSC Cruises. (Doc. 1 ¶¶ 195–96, 199, 201–02). Second, Southern Coast alleges that Bill was "fully knowledgeable" of its contractual relationships with Disney and MSC Cruises. (*Id.* ¶¶ 195, 201). Third, Southern Coast alleges that Bill intentionally procured the breaches of the Disney and MSC Cruises contracts by fraudulently invoicing Disney, circulating false procedures to Disney, and disclosing the MSC Cruises contract terms to a competitor. (*Id.* ¶¶ 70–78, 87–92, 107, 199, 202, 204). Fourth, Bill allegedly lacks a justification or privilege, as the Complaint asserts that he was "motivated by [his] personal interests." (*Id.* ¶¶ 198, 203). Fifth, allegedly as a result of the breach, Disney did "not fulfill its contractual obligations with Southern Coast" and Southern Coast was "forced to sell the MSC Cruises contracts at a very low price." (*Id.* ¶¶ 200, 206–07).

Contrary to Bill's argument, Southern Coast alleges that Bill disclosed the terms of its contract with MSC Cruises to assist his friend's competing business,

causing Southern Coast to fire sell the contracts with MSC Cruises. Bill fails to provide support for his contention that Southern Coast must allege the specific contract terms of the MSC Cruises contract to survive a motion to dismiss. Accordingly, Count 7 sufficiently states a claim for tortious interference with existing contracts.

### H.    Count 8 does not allege an independent tort

Next, Bill argues that Count 8, for conversion, is also due to be dismissed because of the independent tort rule.[10] (Doc. 14 at 20–21 (citing *My Classified Ads, L.L.C. v. Greg Welteroth Holding Inc.*, No. 8:14-cv-2365, 2015 WL 1169857, at *8 (M.D. Fla. Mar. 13, 2015))); *see Kanen v. BBQ Holdings, Inc.*, No. 23-CV-62173, 2024 WL 5508197 (S.D. Fla. Nov. 8, 2024). Bill allegedly converted Southern Coast's funds and assets by, *inter alia*, writing unauthorized checks to himself and to "cash," transferring funds from Southern Coast's bank accounts to his, using Southern Coast's funds to pay for their personal expenses, directing client checks to himself, refusing to remit seminar fees to Southern Coast, and changing Southern Coast's financial account information. (Doc. 1 ¶¶ 54–55, 57–79, 92).

The independent tort rule bars Southern Coast's conversion claim. *See*

---

[10] To state a claim for conversion, Plaintiffs must allege: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Redoak Commc'ns, Inc. v. Adm'r of Est. of Olsen*, No. 23-80008-CIV, 2024 WL 4602821, at *4 (S.D. Fla. Oct. 29, 2024).

*Calvoz*, 2023 WL 11661631, at *5; *see also Freeman*, 2013 WL 2151723, at *8. Allegedly, some of Bill's conduct breaching the Independent Contractor Agreement and the Purchase Agreement "also constitute[s] conversion." (Doc. 1 ¶¶ 70, 75, 92). Southern Coast may have a cognizable conversion claim if it repleads the claim but omits allegations that Bill's conversion of property was also in violation of a contract. (*Id.*). Hence, Count 8 must be dismissed.

## I.    Count 9 does not require ADCA's joinder

Defendants argue that Count 9—for a declaratory judgment as to the ownership of ADCA—is due to be dismissed because it is barred by Delaware's three-year statute of limitations and because ADCA is a required party that has not been joined as a Defendant. *See* Fed. Rs. Civ. P. 12(b)(7) and 19. Defendants acknowledge that "Count 9 essentially alleges a breach of the Purchase Agreement." (Doc. 14 at 21).

Treating Count 9 as essentially a breach of the Purchase Agreement claim that is subject to a three-year statute of limitations, Count 9 is timely. (Doc. 15 ¶ 32).[11] 360 Security alleges that Defendants began performing services with ADCA after Bill's termination in September 2023. (Doc. 1 ¶¶ 45, 79). Thus, Count 9 is not barred by Delaware's statute of limitations.

---

[11] 360 Security's declaratory judgment claim arises out of the same facts as the breach of the Purchase Agreement claim (Count 1). *See BVCV High Point, LLC v. City of Prattville*, No. 2:21-CV-821, 2022 WL 3716592, at *12 (M.D. Ala. Aug. 29, 2022).

Next, contrary to Defendants' argument, ADCA is not a required party that must be joined under Rule 19. Under Rule 19, there is a two-part test to determine "whether a party is indispensable" and must be joined in an action. *In re Wild*, 994 F.3d 1244, 1278 (11th Cir. 2021) (Tjoflat, J., concurring). The first question is "whether the person in question is one who should be joined if feasible."[12] *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)). Second, "[i]f the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Id.* (quoting *Challenge Homes*, 669 F.2d at 669).

Here, the first question is answered in the negative. ADCA is not a required party that should be joined under Rule 19. Defendants do not dispute that they have continuously asserted ownership of ADCA. *See Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 584 (5th Cir. 2020) (holding that because

---

[12] A person is a "required party" for part one of the test when "(A) in that person's absence, the court cannot accord complete relief among existing parties" or (B) the absent person claims an interest in the action and disposing of the action without them may "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii); *see In re Wild*, 994 F.3d at 1278–79.

corporation "was merely [the plaintiff]'s alter ego, it wasn't absent from or necessary to the suit"). And Defendants do not argue that there is a third-party owner of ADCA that distinguishes ADCA from them. (*See* Doc. 15 ¶ 38). Until Defendants began asserting ownership of ADCA, it was a business line operating under 360 Security. ADCA was always "paid for, funded, staffed, and supported" solely by 360 Security and its entities. (Doc. 1 ¶ 219). And ADCA was reporting under the same Tax Identification Number as Southern Coast until Bill's termination, when Defendants allegedly created a new Tax Identification Number for ADCA. (*Id.* ¶¶ 75–81, 219).

Hence, complete relief can be accorded among the existing parties in ADCA's absence. And the interests of Defendants and ADCA are sufficiently similar to ensure that ADCA's interests will be protected and to avoid multiple inconsistent obligations. *See Sykes v. Hengel*, 220 F.R.D. 593, 598 (S.D. Iowa 2004) (holding that a company's interests were unimpaired when they were "almost entirely the same as the interests of the existing [d]efendants"); *accord Dmitriev v. Mann*, 597 F. Supp. 3d 484, 492 (D. Mass. 2022) (holding that absent parties were not necessary parties where their interests were virtually identical to the named defendants that were the "sole founders, shareholders and owners of the relevant businesses"). Thus, Count 9 will not be dismissed.

## IV.    CONCLUSION

Accordingly, Defendants' motion to dismiss (Doc. 14) is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to the following claims, which are **dismissed without prejudice**: 360 Security's breach of contract claim against Bill (Count 1), 360 Security's breach of fiduciary duty claim against both Defendants (Count 3), Southern Coast's breach of fiduciary duty claim against Bill (Count 4), 360 Security's fraud claim against Bill (Count 5), Southern Coast's fraud claim against Bill (Count 6), and Southern Coast's conversion claim against Bill (Count 8).  The motion is otherwise **DENIED**.  Plaintiffs may file an amended complaint within **twenty** days of the entry date of this Order. The amended complaint should exclude any introductory paragraphs.

**DONE** and **ORDERED** in Orlando, Florida, on July 27, 2025.

                                   JOHN ANTOON II
                                   United States District Judge

Copies furnished to:
Counsel of Record