# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SOUTHERN COAST K9, LLC and
360 SECURITY PARTNERS, LLC,

      Plaintiffs,

v.                                  Case No. 6:25-cv-298-JA-LHP

MARGUERITE HEISER and
WILLIAM HEISER,

      Defendants.

---

## ORDER

The parties in this case are in the business of training and placing working dogs. Their personal and business relationships were convoluted, so the devolution of their relationships into a convoluted legal dispute is unsurprising. Plaintiffs Southern Coast K9, LLC (Southern Coast) and 360 Security Partners, LLC (360 Security) filed a nine-count Second Amended Complaint against Defendants Marguerite and William (Bill) Heiser (Marguerite and Bill respectively).[1] (Doc. 60). Plaintiffs' claims arise out of 360 Security's purchase of Southern Coast from Marguerite Heiser. Now before the Court is Defendants' motion to dismiss. (Doc. 62).[2] After careful consideration, the Court concludes

---

[1] The Court uses first names to avoid confusion.
[2] Plaintiffs filed a response to the motion to dismiss. (Doc. 70).

that the motion (Doc. 62) is due to be granted in part and denied in part.

## I.   BACKGROUND[3]

From 1998 to 2020, Marguerite was the majority owner of Southern Coast. Bill did not have an ownership interest in the business, but he managed the business and owned the Florida property on which it was located.  In August 2020, Marguerite contracted to sell Southern Coast to 360 Security, a business located in Texas.[4]  Among other provisions, the Purchase Agreement precluded the Sellers from engaging in a competing business for five years.  (Doc. 60-1 at 14).

Bill did not sign the Purchase Agreement, but he did sign a "spousal joinder" in which he stated that he "has no ownership interest in . . . Southern Coast either directly or as a part of the marital estate of [Marguerite] and [Bill]" and that he "fully consent[ed] and agree[d] to the terms and provisions of [the Purchase] Agreement insofar as it may affect any interest that [he] might have in the membership interests or capital stock directly or indirectly owned by [Marguerite] in . . . Southern Coast." (*Id.* at 31).

Following its sale, Southern Coast began leasing the business's real

---

[3] For purposes of the motion to dismiss, the Court accepts the Second Amended Complaint's allegations as true.

[4] The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. (Doc. 60 ¶¶ 1–3).

property from Bill,[5] who continued to "r[u]n, operate[], and control[]" Southern Coast's operations as its president. (Doc. 60 ¶¶ 19–20, 24, 31–32). Plaintiffs trusted Bill "with all aspects of running the businesses." (*Id.* ¶ 19).

In June 2022, Bill requested to change his status from an employee of Southern Coast to that of an independent contractor. (*Id.* ¶ 40). To that end, 360 Security and Bill entered into an Independent Contractor Agreement. The Independent Contractor Agreement required Bill to "facilitate the transfer of all business assets and operations to a successor executive appointed by" 360 Security. (*Id.* ¶ 43). However, Bill refused to facilitate the transfer of Southern Coast's Drug Enforcement Agency license. (*Id.* ¶ 44–46). Eventually, 360 Security terminated Bill's services all together. (Doc. 60 ¶ 47).

After Bill's termination, Plaintiffs discovered that the Heisers had "caused [them] significant damage" by breaching the Purchase Agreement, the Independent Contractor Agreement, and fiduciary duties; and by committing fraud, tortious interference with existing contracts, and conversion. (*See, e.g., id.* ¶¶ 52, 60, 62, 65, 68, 71–79, 84). Plaintiffs allege that the Heisers continue to "fraudulently hold[] themselves out to be affiliated with Southern Coast," causing Southern Coast's client, Walt Disney World (Disney), to add Southern

---

[5] The business used the property before and after the sale to house and train "K9 handlers and dogs" and to house some of the business's employees. (Doc. 60 ¶¶ 14, 24, 29–31, 54–55, 58).

Coast as an entity under the "'Bill Heiser' vendor account with Disney" and "to send checks to Southern Coast, some in Southern Coast's name and some in the Heisers' name individually." (*Id.* ¶ 75).

Plaintiffs filed this lawsuit against the Heisers in February 2025. Some of the claims in Plaintiffs' first Complaint were dismissed without prejudice upon the Heisers' motion. (Doc. 39).[6] In November 2025, Plaintiffs filed their Second Amended Complaint. (Doc. 60). In it, 360 Security asserts the following claims: breach of contract (relating to the Purchase Agreement) against Marguerite (Count 1), breach of fiduciary duty against Marguerite and Bill (Count 3), and fraud against Bill (Count 5). Additionally, 360 Security seeks a declaratory judgment regarding the ownership of American Detection Canine Association (ADCA) (Count 9). And Southern Coast asserts five claims: breach of contract (relating to the Independent Contractor Agreement) against Bill (Count 2), breach of fiduciary duty against Bill (Count 4), fraud against Bill (Count 6), tortious interference with existing contracts against Bill (Count 7), and conversion against Marguerite and Bill (Count 8). Plaintiffs request compensatory damages, a declaratory judgment, and an injunction that requires

---

[6] The Court dismissed the following claims without prejudice: 360 Security's breach-of-contract claim against Bill, 360 Security's breach-of-fiduciary-duty claim against Marguerite and Bill, Southern Coast's breach-of-fiduciary-duty claim against Bill, 360 Security's fraud claim against Bill, Southern Coast's fraud claim against Bill, and Southern Coast's conversion claim against Bill. (Doc. 39 at 19). Plaintiffs have repleaded most of these claims in the Second Amended Complaint.

4

the Heisers to comply with the Purchase Agreement's restrictive covenants.

## II.    LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Under Federal Rule of Civil Procedure 9(b), a claim for fraud must be pleaded with particularity. "Rule 9(b) requires a complaint to set forth '(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff;

5

and (4) what the defendant obtained as a consequence of the fraud.'" *Rutstein v. Viva 5 Grp., LLC*, No. 8:24-cv-02417, 2025 WL 500559, at *3 (M.D. Fla. Feb. 14, 2025) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

## III. DISCUSSION

Defendants argue that most of the claims in the Second Amended Complaint must be dismissed for various reasons, including failure to state a plausible claim, insufficient particularity, and untimeliness.

### A. Applicable law

As an initial matter, the Purchase Agreement's choice-of-law provision states that it is governed by Delaware law. (*See* Doc. 60-1 at 22). The Independent Contractor Agreement's choice-of-law provision states that it is governed by Texas law. (Doc. 60-2 at 2). And the parties agree that the alleged facts upon which the tort claims are based occurred in Florida. (Doc. 14 at 7). Thus, the Court applies Delaware law to the Purchase Agreement, Texas law to the Independent Contractor Agreement, and Florida law to Plaintiffs' tort claims. (*See* Doc. 39 at 6).[7]

---

[7] The applicable law here is consistent with the law that the parties agreed was applicable to the motion to dismiss the initial Complaint. (Doc. 39 at 6). The parties do not dispute the law applicable to the instant motion to dismiss.

**B.    360 Security's breach of contract claim against Marguerite (Count 1)**

Count 1 alleges that Marguerite and her affiliates breached the Purchase Agreement's non-compete clause, compliance-with-laws provision, and transfer-of-assets provision by soliciting Southern Coast's clients through ADCA, by representing that the business could continue to operate as it had prior to the sale in compliance with the law despite notices of legal violations from Volusia County, and by failing to transfer ownership of ADCA to 360 Security. (Doc. 60 ¶¶ 66, 86–108). Marguerite argues 360 Security fails to state a claim for breach of the Purchase Agreement because, *inter alia*, the non-compete clause is unenforceable and the claim is untimely.

To state a claim for breach of contract, 360 Security must allege: (1) the existence of an express or implied contract, (2) Marguerite breached an obligation imposed by that contract, and (3) resulting damage to 360 Security. *Ridley v. Bayhealth Med. Ctr., Inc.*, No. N17C-04-306, 2018 WL 1567609, at *7 (Del. Super. Ct. Mar. 20, 2018). As explained below, 360 Security sufficiently pleads a claim for breach of contract.

### 1.    *The non-compete clause is not overbroad or unreasonable*

The Purchase Agreement's non-compete clause extends five years (until fall of 2025) and applies globally. Marguerite argues that the clause is temporally unreasonable and geographically overbroad. (Doc. 60-1 at 14). At

the pleading stage, however, the Court cannot conclude that a five-year duration is unreasonable. *See, e.g., O'Leary v. Telecom Res. Serv., LLC*, No. C.A. 10C-03-108, 2011 WL 379300, at \*5 (Del. Super. Ct. Jan. 14, 2011) ("Delaware courts have upheld as reasonable non-compete provisions for the sale of a business as long as ten years." (citing *Tull v. Turek*, 38 Del. Ch. 185–86 (1958))).

Nor can the Court conclude at this stage that the non-compete clause's global application is geographically overbroad. Delaware courts assess a non-compete clause's geographic scope by "the area in which a covenantee has an interest the covenants are designed to protect." *Weichert Co. of Pa. v. Young*, No. C.A. 2223, 2007 WL 4372823, at \*3 (Del. Ch. Dec. 7, 2007). In the context of the sale of a business, a non-compete clause's "national scope can be particularly necessary . . . where so many businesses operate on a national or even global scale." *O'Leary*, 2011 WL 379300, at \*5; *but cf. Kodiak Bldg. Partners, LLC v. Adams*, No. C.A. 2022-0311, 2022 WL 5240507, at \*10–11 (Del. Ch. Oct. 6, 2022) (finding non-compete geographically overbroad where acquirer lacked a "legitimate business interest in protecting . . . preexisting goodwill that predated" its acquisition of a business).

360 Security alleges that it has global business interests—it provides working "dogs to federal, state, county, and municipal" entities that are not limited to Florida. (Doc. 60 ¶ 13); *compare Intertek Testing Servs. NA, Inc. v. Eastman*, No. C.A. 2022-0853, 2023 WL 2544236, at \*4–5 (Del. Ch. Mar. 16,

2023) (finding global non-compete overbroad where there was no allegation that services were provided globally), *with Brace Indus. Contracting Inc., v. Peterson Enters., Inc.*, No. C.A. 11189, 2015 WL 5097240, at *3 (Del. Ch. Aug. 28, 2015) (enforcing restrictive covenant covering U.S. and Canada where employer "d[id] business worldwide"). The dogs are selected and purchased in Europe. (Doc. 60 ¶ 14).

Thus, the Court cannot conclude from the Second Amended Complaint's allegations that the non-compete clause is geographically overbroad.

### 2. The Second Amended Complaint sufficiently alleges that the non-compete clause applies to ADCA

Second, Marguerite argues that the non-compete clause should not be enforced with respect to ADCA because the clause does not contemplate that "a certification business would be considered competition." (Doc. 62 at 10). Marguerite's argument is flawed, however, because it ignores the allegation that ADCA is also competing by providing "dog training . . . services." (Doc. 60 ¶¶ 66–67).

Even if the Second Amended Complaint only alleged that ADCA was competing by providing dog certification services, certification is allegedly encompassed in the business "assets" covered by the non-compete. ADCA has allegedly "always" been Southern Coast's subsidiary that handled Southern Coast's "certification services." (*Id.* ¶ 70). To that end, Southern Coast and

9

ADCA used the same employees and operated on the same property under the same Tax Identification Number. (*Id.*). Southern Coast paid ADCA's expenses and collected all revenue for certifications. (*Id.*). And dog "certifications . . . had both Southern Coast and ADCA insignias on them." (*Id.*).

Thus, at this point the Court cannot conclude that the non-compete clause is unenforceable with respect to ADCA.

### 3. *It is sufficiently alleged that Bill is Marguerite's affiliate*

360 Security alleges that Marguerite and her affiliates breached the Purchase Agreement. Marguerite argues that the allegation that Bill is her "affiliate" is an unsupported legal conclusion. But there are sufficient allegations to support an inference that Bill was Marguerite's "affiliate" as defined by the Purchase Agreement. (*See, e.g.*, Doc. 60 ¶¶ 14, 19 (alleging that while Marguerite was listed as the businesses' owner in the purchase agreement, Bill always ran the businesses and only the Heisers knew about this arrangement)).[8]

### 4. *Count 1 is not clearly time-barred*

Marguerite contends that 360 Security's claim for breach of the Purchase Agreement is untimely under Delaware's three-year statute of limitations. *See*

---

[8] The Purchase Agreement provides that "'Affiliate' with respect to any Person means another Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person." (Doc. 60-1 at 20).

Del. Code tit. 10, § 8106. But Marguerite's argument lacks merit at this stage of the case. *See Trump v. Clinton*, 161 F.4th 671, 684 (11th Cir. 2025) (stating that dismissal under Rule 12(b)(6) is appropriate if it is apparent from the face of the complaint that the claim is time-barred). Delaware's "discovery rule" tolls the statute of limitations for a breach of contract claim "where the [breach] is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'" *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 & n.24 (Del. 2004) (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)). "[T]he statute will begin to run only upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart Stores, Inc.*, 860 A.2d at 319 (emphasis in original) (citations omitted).

The Court cannot conclude at this stage of the case that Plaintiffs' breach-of-Purchase-Agreement claim based on the transfer-of-assets provision—section 3.15—is barred by the statute of limitations. Plaintiffs allege that they were unaware and had no reason to suspect that ADCA had not been transferred until 2023. (Doc. 60 ¶¶ 47, 69–70, 91). Plaintiffs believed that the Purchase Agreement transferred ADCA to 360 Security based on the Purchase Agreement's terms and because certifications continued to occur through

11

Southern Coast and ADCA. (*Id.* ¶ 89). Certifications allegedly did not cease until after Bill's termination, when Plaintiffs learned that Bill and Marguerite continued to operate ADCA on the property. (*Id.* ¶¶ 89–91). Thus, Plaintiffs have sufficiently alleged that the discovery rule tolls the statute of limitations.

Similarly, Plaintiffs' allegations of breach of the Purchase Agreement's compliance-with-laws provision are facially sufficient to survive the Heiser's timeliness argument. The Purchase Agreement's compliance-with-laws provision represented that the businesses could continue to operate as they had before the sale in a lawful manner. (Doc. 60-1 at 11). Plaintiffs allege that before the Purchase Agreement was entered into, Defendants had "received numerous violations from Volusia County," (Doc. 60 ¶ 61), and Plaintiffs allege that these violations evidence a breach of the compliance-with-laws provision. Plaintiffs allege that they did not discover the violations until September 10, 2024, when they were made aware that Volusia County imposed an order requiring that the number of the dogs on the property be reduced from 100 to 30. (*Id.* ¶¶ 55, 62, 100–106). Thus, the claim for breach of the Purchase Agreement's compliance-with-laws provision survives the Heisers' motion to dismiss.

Accordingly, the motion to dismiss Count 1 will be denied.

**C.    360 Security's breach-of-fiduciary-duty claim against Marguerite and Bill (Count 3)[9]**

Defendants argue that Count 3 is due to be dismissed because there are no allegations that they recognized, accepted, and undertook the duties of a fiduciary and because the claim is barred by the independent tort rule. 360 Security sufficiently states a claim for breach of fiduciary duties.

To state a claim for breach of fiduciary duty under Florida law,[10] 360 Security must allege: "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by that breach." *Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812, 819 (11th Cir. 2019) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). Fiduciary relationships are defined very broadly, *Catano v. Capuano*, No. 18-20223-Civ, 2020 WL 639406, at *12 (S.D. Fla. Feb. 11, 2020), and exist where "confidence is reposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused," *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (quoting *Quinn v. Phipps*, 113 So. 419, 421 (1927)). A fiduciary relationship may be expressly created, or it may be implied depending on "the specific factual situation surrounding the transaction and the relationship of the parties." *Id.* (quoting *Cap. Bank v. MVB*,

---

[9] Southern Coast also asserts a breach-of-fiduciary-duty claim against Bill in Count 4, but Bill has not sought dismissal of that claim.

[10] The parties apply Florida law to the breach-of-fiduciary-duty claim, which arises in tort. (Doc. 62 at 15; Doc. 70 at 11); *see, e.g.*, *King v. King*, 69 F.4th 738, 743 (11th Cir. 2023) (per curiam).

*Inc.,* 644 So. 2d 515, 518 (Fla. 3d DCA 1994)).

360 Security sufficiently alleges the existence of an implied fiduciary relationship between it and Defendants. Before 360 Security took ownership of the businesses, Defendants allegedly owned and jointly operated the businesses for decades, "and based on that fact, [Defendants] represented that they would continue to operate [the businesses] in a way that was in [the businesses'] best interests." (Doc. 60 ¶ 24); *see Catano,* 2020 WL 639406, at *12 (noting that "a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6) because it is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship" (alteration in original)).

Defendants also argue that 360 Security likely does not allege the dates of the asserted breaches of fiduciary duties to avoid the independent tort rule, which had resulted in the dismissal of the initial Complaint's breach-of-fiduciary-duties claim. (*See* Doc. 62 at 17). Under the independent tort rule, "parties to a contract can only seek tort damages if the alleged tortious conduct constitutes a tort distinct from the parties' contractual rights and obligations." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* No. 06-80652-CIV, 2007 WL 7124464, at *8 (S.D. Fla. Feb. 12, 2007). But unlike the initial Complaint's dismissed breach-of-fiduciary-duties claim, Count 3 of the Second Amended Complaint does not allege that Defendants' breach of fiduciary duties was also a breach of contract. Instead, 360 Security alleges that Defendants' breach of

14

fiduciary duties is "[s]eparate and distinct" from the breaches of contract alleged. (Doc. 60 ¶ 39).

Accordingly, Count 3 sufficiently states a claim for breach of fiduciary duties against Defendants.

### D.    Plaintiffs' fraud claims against Bill (Counts 5 and 6)[11]

Bill argues that Plaintiffs' fraud claims, Counts 5 and 6, are due to be dismissed because they do not allege with particularity how his representations were false, the date that his representations occurred, or which employees were unlawfully hired. Bill suggests that Plaintiffs make generalities in an attempt to avoid the Court's prior ruling that the independent tort rule barred the fraud claims alleged in the initial Complaint. (*See* Doc. 62 at 19 (citing Doc. 39 at 12–13)).

Under Florida law, to state a claim for fraudulent inducement or misrepresentation, Plaintiffs must allege: (1) "a false statement concerning a material fact," (2) Bill knew the representation was false, (3) the representation was intended to induce Plaintiffs to act on it, and (4) Plaintiffs were injured by relying on the representation. *Rutstein*, 2025 WL 500559, at *4. Plaintiffs allege the fraud claims with sufficient particularity.

---

[11] 360 Security asserts Count 5 against Bill, and Southern Coast asserts Count 6 against Bill.

15

Plaintiffs allege that after the businesses were purchased, they asked Bill—then serving as President of the businesses—whether all employees or staff performing work for the businesses were legally documented and properly employed. (Doc. 60 ¶ 31). Bill allegedly responded by making fraudulent statements that all employees "were legally and properly employed," "that he had implemented a [v]isa program . . . with the assistance of his attorney that vetted employees" to ensure all employment was proper, that workers were "independent contractors," and "that any missing [original] visa or immigration documentation was" destroyed by a fire on the property but copies or new originals of the documents were being obtained. (*Id.* ¶¶ 29–34, 135–38, 148–51). Plaintiffs allege that Bill made these representations between August 2020 and May 2022 and that the fraud was not uncovered until October 2023. (*Id.* ¶¶ 35, 135, 148). And while Plaintiffs do not allege the names of the undocumented immigrants who were allegedly unlawfully hired and fired, Bill provides no case law to support his assertion that the names must be pleaded to state a claim for fraud with the requisite particularity.

Additionally, the independent tort rule does not bar Plaintiffs' fraud claims, in contrast to the fraud claims that were pleaded in the initial Complaint. Unlike the initial Complaint, the Second Amended Complaint does not "allege that Bill's conduct that constitutes fraud also constitutes a breach of contract." (Doc. 39 at 13). And the Second Amended Complaint alleges that Bill

16

made fraudulent representations before entering into the Independent Contractor Agreement on which the breach-of-contract claim against him is based. (Doc. 60 ¶¶ 31, 135, 148).

Accordingly, the motion to dismiss will be denied as to Counts 5 and 6.

### E. Southern Coast's claim for tortious interference with existing contracts against Bill (Count 7)

Next, Bill argues that Count 7 is barred by the independent tort rule because it is based on the same conduct that gives rise to Count 1 and because Southern Coast is a third-party beneficiary of the Purchase Agreement that underlies Count 1. But the independent tort rule does not require the dismissal of Southern Coast's claim for tortious interference against Bill. Southern Coast points out that unlike in the initial Complaint, the breach-of-Purchase-Agreement claim (Count 1) in the Second Amended Complaint is not asserted against Bill. (*See* Doc. 39 at 9); *see also Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. 4th DCA 2022) (stating that the independent tort rule only applies to parties to a contract and concluding that the trial court erred in determining the rule resulted in a non-party signatory to a contract being not liable in tort). Thus, Count 7 will not be dismissed.

### F. Southern Coast's conversion claim against Defendants (Count 8)

Next, Defendants argue that Count 8, for conversion, is due to be

17

dismissed pursuant to the independent tort rule.[12]

To the extent that Southern Coast's conversion claim is based on the alleged conversion of over-inflated bonuses, it is not barred by the independent tort rule. The Second Amended Complaint does not allege that Defendants paid themselves over-inflated bonuses in breach of the Purchase Agreement or Independent Contractor Agreement (Counts 1 and 2).

However, to the extent Southern Coast's conversion claim is based on the alleged conversion of ADCA, it is barred by the independent tort rule. The Second Amended Complaint alleges that ADCA was required to be transferred to 360 Security under the Purchase Agreement but that it was not transferred and instead was essentially stolen by Defendants—in breach of the Purchase Agreement. (Doc. 60 ¶¶ 70, 71).

Thus, the independent tort rule requires dismissal of Count 8 to the limited extent that the claim alleges conversion of ADCA. The motion to dismiss Count 8 will otherwise be denied.

### G. 360 Security's request for a declaratory judgment as to ADCA (Count 9)

To state a claim for declaratory relief, 360 Security must allege that there

---

[12] To state a claim for conversion, Plaintiffs must allege: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Redoak Commc'ns, Inc. v. Adm'r of Est. of Olsen*, No. 23-80008-CIV, 2024 WL 4602821, at *4 (S.D. Fla. Oct. 29, 2024).

is an "actual controversy"—meaning there is (1) "a substantial continuing controversy between two adverse parties" that is (2) "real and immediate." *Saltponds Homeowners Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-10063-CIV, 2021 WL 3284841, at *2 (S.D. Fla. July 29, 2021); the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants argue that Count 9—for a declaratory judgment as to the ownership of ADCA—is due to be dismissed because it fails to "plead that a contractual term or provision [of the Purchase Agreement] is ambiguous and needs construction." *Saltponds*, 2021 WL 3284841, at *2.

Plaintiffs convincingly argue that there is no binding authority in this circuit that requires them to plead that a term or provision of the Purchase Agreement is ambiguous to state a claim under the federal Declaratory Judgment Act. *Contrast id.* (stating that the Southern District of Florida "requires plaintiffs to plead an uncertainty or ambiguity"), *with RHC Dev., LLC v. Addison Ins. Co.*, No. 6:24-cv-2120, 2025 WL 2432523, at *3 (M.D. Fla. Aug. 23, 2025) (lacking requirement to plead uncertainty or ambiguity in contract term). Plaintiffs sufficiently plead an "actual controversy." The controversy is substantial and "continuing" because Defendants allegedly continue to use ADCA as a business entity. (Doc. 60 ¶¶ 75, 84, 185). Likewise, Plaintiffs sufficiently allege the controversy is "real and immediate." And Plaintiffs argue that the question at issue is whether the "assets" include ADCA. (Doc. 70 at 22). Thus, the motion to dismiss Count 9 will be denied.

19

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss (Doc. 62) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** only to the extent that Count 8 is dismissed in part as explained in the body of this Order. The motion is otherwise **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida, on March 5, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

20